CITY OF BROOMFIELD, a municipal corporation, Petitioner,

v.

WALNUT CREEK DEVELOPMENT CORPORATION, a Colorado corporation, Colorado Federal Savings and Loan Association, Nancy Fleet as Public Trustee, County of Jefferson, Donald Couch as Treasurer of the County of Jefferson, and Timothy D. Roble as Trustee in Bankruptcy for Walnut Creek Development Corporation, U.S. District Court for the District of Colorado, Bankruptcy No. 78 B 3925, Respondents,

Thomas G. Bonar and Iris T. Bonar, Cross-Complainants-Appellants,

and

Timothy D. ROBLE, Trustee in Bankruptcy for Walnut Creek Development Corporation, U.S. District Court for the District of Colorado, Bankruptcy No. 78 B 3925, Respondent-Appellant,

v.

COLORADO FEDERAL SAVINGS AND LOAN ASSOCIATION, Respondent-Appellee.

Nos. 80CA0678, 80CA0696.

Colorado Court of Appeals.

Oct. 14, 1982.

Rehearing Denied Dec. 2, 1982.

Certiorari Denied July 5, 1983.

David J. Miller & Associates, David J. Miller, Kevin L. Strobel, Greeley, for cross-complainants-appellants.

Frank P. Slaninger, Denver, for respondent-appellant.

Bradley, Campbell & Carney, P.C., Victor F. Boog, Golden, for respondent-appellee.

VAN CISE, Judge.

Timothy D. Roble, as trustee in bankruptcy of Walnut Creek Development Corporation (Walnut Creek), and Thomas G. and Iris T. Bonar, judgment creditors of Walnut Creek, appeal the trial court orders awarding to Colorado Federal Savings and Loan Association (Colorado Federal) all of the proceeds paid by the City of Broomfield (the condemnor) as a result of its condemnation of 5.395 acres of land for a construction site and .230 acres for a right of way and easement. We affirm.

The material facts are not in dispute. In November 1977 the condemnor filed its petition in condemnation, joining as respondents, among others, Walnut Creek, the then fee owner of approximately 450 acres of land including the subject property, and Colorado Federal, the holder of a note from Walnut Creek secured by a first deed of

trust on the 450 acres. Walnut Creek answered and consented to the entry of an order on November 14 for immediate possession of the subject property on the deposit of $33,000 "as a deposit to compensate the respondents when the proper compensation is finally ascertained for the taking of said property."

In March 1978, Walnut Creek being in default, Colorado Federal foreclosed on its deed of trust and obtained a certificate of purchase. Thereafter, the Bonars, formerly principals in Walnut Creek, obtained a judgment against Walnut Creek, recorded the transcript of judgment and, as judgment creditors, filed notice of intent to redeem. However, they did not redeem and, on October 6, after the time for redemption had expired, a public trustee's deed for the entire 450 acres was issued to Colorado Federal.

In November, Colorado Federal filed a motion for withdrawal of three-fourths of the deposited funds, based on its now being the owner of the subject property. The Bonars sought to garnish the funds based on their judgment against Walnut Creek. Also, they filed a "cross-complaint" in the condemnation proceedings, asking the court to declare that Colorado Federal had no claim against Walnut Creek or to the deposited funds and that these funds should be paid over to the Bonars.[1] In December, Walnut Creek took bankruptcy.

Thereafter, the trustee in bankruptcy for Walnut Creek entered his appearance. In April 1979, there was a hearing on Colorado Federal's motion. The Bonars abandoned their "cross-complaint." Over the claims of the trustee and the Bonars that the condemnation proceeds belonged to the bankrupt estate, the court determined that any interest Walnut Creek had in the subject property had been foreclosed upon, that fee title had not passed to the condemnor, and that, as owner, Colorado Federal was entitled to withdraw 75% of the deposited money.

After further litigation, including an appeal to this court, the trustee and Colorado Federal stipulated that $33,000 (the amount previously deposited) was a fair price for the land, but left open the question of who was entitled to the money.

In March 1980, based on the "stipulation and joint motion" of Colorado Federal and the condemnor and on its previous orders, the court entered its "rule, order, judgment and decree." It found that the condemnor was entitled to condemn the subject property, that the agreed value was $33,000, and that Colorado Federal was entitled to receive the balance of the money deposited together with any earnings thereon. It then ordered that the subject property had been duly taken by the condemnor, that it had acquired the interest of Colorado Federal therein, that title thereto vested in the condemnor, and that a certified copy of this order, recorded, had the effect of a deed of conveyance from the owner to condemnor.

On denial of their new trial motions, the trustee and the Bonars appeal. The amount of the award is not challenged. However, they contend that the right to the proceeds vested in Walnut Creek at the time possession of the subject property was granted to the condemnor, that the court erred in turning over the money to Colorado Federal, and that, instead, the proceeds belong to the bankrupt estate. We do not agree.

■ The issue on this appeal is at what stage in the condemnation proceedings, under our statutes, does the right to the compensation vest. Section 38–1–105(6)(a), C.R.S.1973, provides that, at any stage of the proceedings, the court may authorize the condemnor to take immediate possession of and use the subject property "during the pendency and until the final conclusion" of the proceedings upon the deposit of a sufficient sum with the court. However, an order for immediate possession does not in-

---

1. The standing of the Bonars in this action and in this appeal has not been challenged, so we do not address that issue.

volve the title to the lands. *Swift v. Smith,* 119 Colo. 126, 201 P.2d 609 (1948).

▪ Sections 38–1–105(3) and 38–1–105(4), C.R.S.1973, provide that before the court can enter its rule effecting transfer of title, two conditions must be met. First, a commissioners' certificate of ascertainment and assessment must be filed or a verdict of a jury must be returned, determining the compensation. The 1980 stipulation between the condemnor and Colorado Federal served the same purpose here. Second, there must be proof that the full amount of the compensation has been paid to the party entitled or has been deposited with the court. The $33,000 deposited with the court and the March 1980 stipulation as to value and its approval by the court fulfilled this condition.

These statutory provisions indicate "the exact moment when [the condemnor] becomes entitled to the rule which operates as a conveyance to [it] of the fee of the premises, and the right to possess, use and enjoy the same. But ... the rights of [condemnor] and [the property owner] are reciprocal. [The property owner] acquires no vested right to the compensation awarded until [condemnor] has secured a vested right to the property condemned, and *vice versa.*" *Denver & New Orleans R.R. Co. v. Lamborn,* 8 Colo. 380, 8 P. 582 (1885).

The court did not err in granting Colorado Federal's motion and authorizing it to withdraw 75% of the amounts on deposit, since at that time, as required by § 38–1–105(6)(b), C.R.S.1973, it was the owner of the subject property. And, Colorado Federal was the owner, and therefore the "person entitled," at the time the rule was entered and final distribution made.

Orders affirmed.

COYTE and TURSI, JJ., concur.